**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| In re: | Chapter 11 |
| | Subchapter V |
| **Greenup Industries, LLC** | |
| | Case No. 23-12179 |
| ***Debtor*** | |
| | Section A |

**DEBTOR'S SECOND IMMATERIALLY AMENDED PLAN OF REORGANIZATION UNDER SUBCHAPTER V DATED JUNE 5, 2024**

The Debtor's Second Immaterially Amended Subchapter V Plan of Reorganization Dated June 5, 2024 (the "Plan"), is presented to you to inform you of the proposed Plan for restructuring the debt of Greenup Industries, LLC (the "Debtor").  This amended Plan amends the Debtor's First Amended Plan of Reorganization under Subchapter V Dated May 3, 2024 [Dkt. No. 259].  The modifications contained herein are immaterial and are meant to clarify the status of Wells Fargo Equipment Finance as a holder of a Deficiency Claim and to update certain claim amounts and projections.

**YOUR RIGHTS MAY BE IMPACTED BY THIS PLAN. YOU SHOULD CONSIDER DISCUSSING THIS DOCUMENT WITH AN ATTORNEY.**

Submitted by:

/s/ *Michael E. Landis*
Douglas S. Draper, La. Bar No. 5073
Leslie A. Collins, La. Bar No. 14891
Greta M. Brouphy, La. Bar No. 26216
Michael E. Landis, La. Bar NO. 36542
**HELLER, DRAPER & HORN, L.L.C.**
650 Poydras Street, Suite 2500
New Orleans, LA  70130-6103
Telephone: 504.299.3300/Fax: 504.299.3399
ddraper@hellerdraper.com
lcollins@hellerdraper.com
gbrouphy@hellerdraper.com
mlandis@hellerdraper.com
*Counsel for the Debtor*

{00381853-4}

## ARTICLE 1: BACKGROUND

### 1.1.    Filing of the Debtor's Chapter 11 Case.

On December 20, 2023 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Subchapter V[1] of Chapter 11 of the Bankruptcy Code. This Chapter 11 Case is pending in the Bankruptcy Court.[2]

### 1.2.    The History and Nature of the Debtor's Business.

Greenup Industries, LLC was founded in 2012 and traditionally operated as a construction management/consultant company.  It continues to operate in that manner today.  The Debtor has contracts with the United States Army Corps of Engineers ("USACE") and other private entities as both consultant and as a construction manager.

In late 2020, the Debtor was awarded a West Shore Lake Pontchartrain, Louisiana, Hurricane and Storm Damage Risk Reduction Project at the Bonnet Carre Stockpile in St. Charles Parish, Louisiana between the Debtor and the USACE (the "Bonnet Carre Project").  The work on the Bonnet Carre Project consisted of excavating, processing, and stockpiling clay material; clearing and grubbing, and other incidental work.

During the course of operations on the Bonnet Carre Project, one of the Debtor's subcontractors left the job.  In order to fill the void, the Debtor attempted to take on the work itself.  What followed was significant delays due to the pandemic and weather related issues as well as the Debtor's lack of experience in taking on actual construction activities.  The delays required the Debtor to take on ill-advised loans from Merchant Cash Advance ("MCA") lenders causing the Debtor's debt to further grow.

The Debtor also took out loans in order to acquire the equipment necessary to take on its new construction operations.  The Debtor has ceased those operations under the Bonnet Carre Project and has surrendered the equipment and vehicles (save for the few vehicles necessary for the Debtor's management operations) to the Equipment Lenders.

Due to the debt taken on and the stalling of the Bonnet Carre Project, the Debtor became unable to meet its debt obligations and filed the instant case.  During the course of this bankruptcy case, the Debtor has also rejected the Bonnet Carre Project contract under section 365 of the Bankruptcy Code and intends to use the Debtors continued revenue from its other projects and future projects to fund the payments outlined in this plan.

---

[1] See §§ 1181 – 1195 of the Bankruptcy Code.
[2] The Bankruptcy Court is located at 500 Poydras Street, Suite B-601, New Orleans, LA 70130. www.laeb.uscourts.gov.

The Debtor's remaining projects include:

a)   New Orleans to Venice, LA, NOV-NF-W-05a.1, First Lift Levee and Drainage Canal Relocation Project, La Reusitte to Myrtle Grove, Plaquemines Parish, Louisiana (the "Myrtle Grove Project"), dated August 2021, between the USACE and the JV.

b)   A Lafourche Basin Levee District ("LBLD") Sunset Professional Service Contract.

c)   A CSRS Master Plan Professional Service Contract

d)   A LBLD Segment 4 Professional Service Contract

e)   A LBLD Permits Professional Service Contract

f)   An Avondale Gardens Professional Service Contract with Terry Honore Construction

g)   A Tracker Revenue Professional Service Agreement.

Additionally, the Debtor anticipates being awarded four new contracts in the fourth quarter of 2024:

a)   A LBLD Badeaux Lane Professional Service Contract

b)   A LBLD Construction Management Segment 3 Professional Service Contract.

c)   A USACE SW Louisiana Project

d)   A Jackson Water Professional Service Contract.

### 1.3.   Legal Structure and Ownership.

The Debtor is a Louisiana limited liability company organized in 2012. The sole member of the Debtor is Rodney Greenup, Jr. The Debtor is a "small business debtor" as that term is defined under § 101(51D) of the Bankruptcy Code.

### 1.4.   Liquidation Analysis.

To confirm this Plan, the Bankruptcy Court must find that all holders of Allowed Claims who do not accept this Plan will receive at least as much under the Plan as such holders would receive in a Chapter 7 Liquidation. A Liquidation Analysis is attached hereto as **Exhibit A.** The Liquidation Analysis reveals that in a hypothetical Chapter 7, unsecured creditors would not receive a distribution. This Plan proposes to pay unsecured creditors its projected disposable income of $286,588.22 in year 1, $62,387.76 in year 2, and $0.00 in year 3 due to an expected negative cash flow in year 3 of ($30,812.56). (Total of $318,163.42), which is greater than the liquidation value.

### 1.5. <u>Feasibility.</u>

The Debtor must show that it will have enough cash over the life of the Plan to make the required Plan payments and operate the Debtor's business. The Debtor will provide projected financial information as **Exhibit B**. The financial projections are based on historical data, current performance, expected contract awards in the fourth quarter of 2024, and the management's experience.

### <u>ARTICLE 2: SUMMARY OF THIS PLAN AND DISTRIBUTIONS TO CREDITORS</u>

This case was commenced under Subchapter V of Chapter 11 of the Bankruptcy Code. This Subchapter enables small business debtors such as the Debtor to more effectively reorganize in Chapter 11.

Under this Plan, the Debtor intends to distribute cash generated from its operations to holders of Allowed Claims.  This Plan provides for the treatment of Claims and Interests as follows, and as more fully described herein:

- Four Classes of Secured Claims, which will be paid the secured value of such creditors' collateral, plus interest, over time;

- Five Classes of Deficiency Claims;

- One Class of Litigation Claims; and

- One Class of Unsecured Claims that will be paid their pro rata share of the projected disposable income over the next 36 months.

- Rodney Greenup, Jr., the Debtor's equity interest holder, will retain his ownership interests in the Debtor.

- Two classes of subordinated claims

**All holders of Claims should refer to Articles III and IV of this Plan for information regarding the precise treatment of their Claims.**

In addition, the Debtor anticipates that it will owe the following Administrative Expenses (subject to allowance by the Bankruptcy Court), which will be paid in full upon the later of the Effective Date or Bankruptcy Court approval:

| Administrative Claimant | Role | Claim Amount (est.) |
|---|---|---|
| Heller, Draper & Horn, LLC | Attorney for the Debtor | $65,000.00 |
| Lucy Sikes | Subchapter V Trustee | $10,000.00 |

{00381853-4}                                        3

| | | |
|---|---|---|
| Derek Mathews | CPA | $36,000.00 |
| Jones Walker, LLP | Special Counsel for the Debtor | $140,000.00 |

**ALL CLAIMS FOR ADMINISTRATIVE EXPENSES MUST BE NOTICED FOR HEARING AND ARE SUBJECT TO REVIEW AND APPROVAL BY THE BANKRUPTCY COURT.**

The last day to file an application for Allowance of an Administrative Expense Claim is the twenty-eighth (28th) calendar day after the Effective Date.  Any application for Allowance of an Administrative Expense Claim that is not timely filed shall be deemed waived and barred as a Claim against the Debtor.

## ARTICLE 3:  CLASSIFICATION OF CLAIMS AND INTERESTS

| 3.01 | Class 1 | Class 1 relates to the Claim of the United States Small Business Administration (the "SBA"). The SBA has a first ranking security interest in the Debtor's accounts, equipment, and inventory, secured by a UCC-1 Financing Statement. The SBA has a claim in the amount of $528,437.52. |
|---|---|---|
| 3.02 | Class 2 | Class 2 relates to the secured claims of Ally Bank ("Ally") which has a first lien interest in the following vehicles of the Debtor:<br><br>• 2019 GMC Yukon Utility 4D Denali<br>• 2019 Dodge Ram 1500 Classic Crew Cab<br>• 2020 Ford F-250 Pickup<br><br>Ally filed the following secured proofs of claim:<br><br>• Claim # 16 - $45,404.62 (secured by the 2019 Yukon)<br>• Claim # 17 - $23,728.56 (secured by the 2019 Ram)<br><br>The Debtor listed Ally on Schedule D with a secured claim of $44,490.82, secured by the 2020 F-250.<br><br>Ally's total amount of secured claims is $113,624.00[3] |
| 3.03 | Class 3 | Class 3 relates to the secured claim of AmeriCredit Financial Services, Inc. dba GM Financial ("GM Financial"), which has a secured claim in the amount of $24,404.84, secured by a first lien on a 2020 Chevrolet Silverado. |

---

[3] Ally also has an unsecured claim in the amount of $308.05 to be included in Class 10.

| 3.04 | Class 4 | Class 4 relates to the partially secured claim of Rocket Capital NY LLC ("Rocket Capital"), which has a secured claim in the amount of $71,572.48, secured by a properly recorded UCC-1 Financing Statement over the Debtor's accounts receivable, and an unsecured claim in the amount of $355,063.71. |
| --- | --- | --- |
| 3.05 | Class 5 | Class 5 relates to the Deficiency Claims of Regions Bank d/b/a Ascentium Capital ("Regions"). Regions filed proofs of claim nos. 21 and 22 in the amounts of $62,788.84 and $69,846.98 as general unsecured claims related to the deficiency remaining after the sale of Region's collateral. Regions will have an allowed unsecured claim in the amount of $132,635.82. |
| 3.06 | Class 6 | Class 6 relates to the Deficiency Claim of Hanmi Bank, as successor in interest to Regions Bank, d/b/a Ascentium Capital, LLC ("Hanmi"). The Debtor surrendered Hanmi's collateral, consisting of a 2005 Mack, CV71 Granite Dump Truck, a 2005 Mack, 700 CV700 Granite Dump Truck, and a 2002 Mack, CH613 Dump Truck, on October 19, 2023. <br><br> Hanmi will have a general unsecured claim in the amount of its Deficiency Claim. |
| 3.07 | Class 7 | Class 7 relates to the Deficiency Claim of Stearns Bank ("Stearns"). Stearns filed proof of claim no. 25, asserting a secured claim in the amount of $202,598.00, and an unsecured claim in the amount of $99,685.80. On August 24, 2023, the Debtor surrendered the equipment comprising Stearns collateral to Stearns. |
| 3.08 | Class 8 | Class 8 relates to the Deficiency Claim of First Citizens Bank & Trust Co. ("First Citizens"). First Citizens filed proof of claim no. 1, asserting a general unsecured claim based on the First Citizens Deficiency Claim of $275,171.77. <br><br> First Citizens shall be entitled to participate *pro rata* in distributions with the holders of Class 10, General Unsecured Claims. |
| 3.09 | Class 9 | Class 9 relates to the Deficiency Claim of Mitsubishi HC Capital America, Inc. ("Mitsubishi"). Mitsubishi filed proof of claim no. 26, asserting a secured claim in the amount of $906,588.65. On September 25, 2023, the Debtor surrendered the Mitsubishi collateral to Mitsubishi. |

| 3.10 | Class 10 | Class 10 relates to the holders of General Unsecured Claims.  A list of the general unsecured creditor and their allowed claim amounts is attached hereto as **Exhibit C.** |
|------|----------|------|
| 3.11 | Class 11 | Class 11 relates to the holders of the equity interests of the Debtor. |
| 3.12 | Class 12 | Class 12 relates to the holders of the Litigation Claims.  The amount of these creditors' claims will be held in escrow pending resolution of the disputes related to the Litigation Claims, at which point the holders of the Litigation Claims will be entitled to a pro rata distribution with the holders of Class 10 claims in the allowed amount of their claims. |
| 3.13 | Class 13 | Class 13 relates to the claim of Ecorobotics, LLC. ("Ecorobotics"). Ecorobotics filed claim no. 15 stating an unsecured claim in the amount of $2,107,304.80, including $963,426.13 in unpaid invoices, $39,438.62 in accrued interest, $19,500.00 in attorney's fees and costs, and $1,084,940.05 in claimed penalties. |
| 3.14 | Class 14 | Class 14 relates to the claim of Beard Construction Group, LLC ("BCG").  BCG filed claim no. 34, asserting a general unsecured claim in the amount of $309,148.50, including $290,179.00 in penalties and $18,969.50 in attorney's fees. |

## ARTICLE 4:  TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS AND PRIORITY TAX CLAIMS

| 4.01 | Unclassified Claims | Under § 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims are not in classes. |
|------|---------------------|------|
| 4.02 | Administrative Expense Claims | The Debtor estimates that the aggregate amount of Allowed Administrative Expense Claims will be $251,000.00, including:<br><br>• Heller, Draper & Horn, LLC, counsel for the Debtor – $65,000.00 (less amounts held in Heller Draper & Horn's trust account as a retainer)<br><br>• Lucy Sikes, the Subchapter V Trustee – $10,000.00; and |

| | | • Derek Mathews, C.P.A. - $36,000.00.<br><br>• Jones Walker LLP, special counsel for the Debtor – $140,000.00.<br><br>All requests for allowance of an Administrative Expense Claim shall be filed not later than twenty-eight (28) calendar days after the Effective Date. It is anticipated that the Administrative Expense Claims shall be paid in full upon the Effective Date, or upon Court Approval of the requested Claims, from cash on hand by the Debtor in its debtor-in-possession bank account (the "<u>DIP Account</u>"). If there are insufficient funds in the DIP Account to satisfy in full the payment of Administrative Expense Claims, this Plan provides for the payment of Allowed Administrative Expense Claims over time, from the first available funds, which may delay payments to priority and unsecured creditors.<br><br>**ALL ADMINISTRATIVE EXPENSE CLAIMS ARE SUBJECT TO REVIEW AND APPROVAL BY THE BANKRUPTCY COURT.** |
|---|---|---|
| 4.03 | Priority Claims | The IRS has a priority claim in the amount of $16,760.94 for FICA taxes. This Claim will be paid in 19 equal quarterly payments commencing on the Effective Date. Notwithstanding the foregoing, the full amount of the IRS priority claim shall be paid in full prior to December 20, 2028. |
| 4.04 | Statutory Fees | The Debtor is not required to pay fees under 28 U.S.C. § 1930 (quarterly U.S. Trustee fees) because this case was commenced under Subchapter V of Chapter 11 of the Bankruptcy Code. |
| 4.05 | Prospective Quarterly Fees | The Debtor is not required to pay quarterly fees under 28 U.S.C. § 1930 because this case was commenced under Subchapter V of Chapter 11 of the Bankruptcy Code. |

## <u>ARTICLE 5: TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN</u>

Claims are divided below into fourteen classes, that being the secured classes of the SBA (Class 1), Ally Bank (Class 2), GM Financial (Class 3), and Rocket Capital (Class 4); the Deficiency Claims of Regions (Class 5), Hanmi (Class 6), Stearns (Class 7), First Citizens (Class

8), and Mitsubishi (Class 9); the General Unsecured Creditors (Class 10); the Litigation Claims (Class 12); and the Subordinated Claims of Ecorobotics (Class 13) and BCG (Class 14). The Equity Interest Holder (Class 11) (Rodney Greenup, Jr.) will retain the ownership interest in the Reorganized Debtor.

Only Creditors in classes that are impaired may vote on whether to accept or reject this Plan, and only Creditors holding Allowed Claims may vote. A class accepts this Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the Allowed Claims that actually vote, vote in favor of this Plan. A class that is not impaired is deemed to accept this Plan.

Claims shall be treated as follows under this Plan:

| Class | Impairment | Treatment |
|-------|------------|-----------|
| Class 1 – SBA | NO | The SBA has a secured claim of $528,437.52. The Debtor will continue to make payments to the SBA as contained in the original loan documents and the SBA will retain its lien on the Debtors tangible and intangible personal property in accordance with the UCC-1 Financing Statement recorded by the SBA on August 10, 2020.<br><br>The SBA monthly payments will be **$2,528.00.**<br><br>The SBA will retain all rights and remedies against the Debtor as outlined in the original loan documents. |
| Class 2 – Ally Bank | NO | Ally filed the following secured proofs of claim:<br><br>• Claim # 16 - $45,404.62 (secured by the 2019 Yukon)<br>• Claim # 17 - $23,728.56 (secured by the 2019 Ram)<br><br>The Debtor listed Ally on Schedule D with a secured claim of $44,490.82, secured by the 2020 F-250. |

| | | |
|---|---|---|
| | | Ally's total amount of secured claims is $113,624.00[4] <br><br> The Debtor will continue payments under the terms of the original notes in the amounts provided in the notes until paid in full. The monthly payments are detailed below: <br><br> 2018 Yukon..........................$1,318.62 <br> 2019 Ram...............................$679.90 <br> 2020 F-250.............................$956.02 <br> **Total.....................................$2,954.54** <br><br> Ally will retain its liens on the vehicles securing its claims including all rights and remedies against the Debtor as provided for in the notes. |
| Class 3 – GM Financial | NO | GM Financial has a secured claim in the amount of $24,404.84, secured by a first lien on a 2020 Chevrolet Silverado. <br><br> The Debtor will continue payments under the terms of the original notes in the amounts provided in the notes until paid in full. <br><br> The GM Financial monthly payment will be **$724.67.** <br><br> GM Financial will retain its liens on the vehicle securing its claim including all rights and remedies against the Debtor as provided for in the note. |
| Class 4 – Rocket Capital | YES | Rocket Capital has a secured claim in the amount of $71,572.48, secured by a properly recorded UCC-1 Financing Statement over the Debtor's accounts receivable, and an unsecured claim in the amount of $355,063.71. <br><br> Rocket Capital's lien is junior in rank to the SBA's lien on the Debtor's accounts receivable. As of the Petition Date, the |

---

[4] Ally also has an unsecured claim to be included in Class 10.

| | | |
|---|---|---|
| | | Debtor had $600,000 in A/R. The SBA has a fist priority lien in the amount of $528,427.52. Rocket Capital is secured by the remaining $71,572.48.<br><br>Rocket Capital will retain its lien after the Effective Date and will be paid $71,572.48 in 12 equal quarterly payments. These payments will be made directly by the Debtor as the disbursement agent (as opposed to the Subchapter V Trustee). These payments will be made on a quarterly basis, beginning on the 15th day of the third month following the Plan Effective Date.<br><br>Rocket Capital will also be granted an allowed general unsecured claim in the amount of $355,063.71 and will participate in its *pro rata* share of distributions to Class 10 General Unsecured Creditors. |
| Class 5 – Regions | YES | Regions filed proofs of claim nos. 21 and 22 in the amounts of $62,788.84 and $69,846.98 as general unsecured claims related to the deficiency remaining after the sale of Region's collateral.<br><br>Regions will have an allowed unsecured claim in the amount of $132,635.82 and will participate *pro rata* in distributions with the Class 10, General Unsecured Claims. |
| Class 6 – Hanmi | YES | The Debtor surrendered Hanmi's collateral, consisting of a 2005 Mack, CV71 Granite Dump Truck, a 2005 Mack, 700 CV700 Granite Dump Truck, and a 2002 Mack, CH613 Dump Truck, on October 19, 2023.<br><br>Through this plan, and 11 U.S.C. § 554, the Debtor hereby formally abandons all right, title, and interest in the Hanmi collateral (to the extent the estate retains any right, title, or interest) to Hanmi in full satisfaction of its secured claim. |

| | | |
|---|---|---|
| | | Hanmi will have until 28 days after the Effective Date (the "Accounting Deadline") to provide the Debtor, through its counsel of record, Michael E. Landis, at 650 Poydras St., Ste. 2500, New Orleans, LA 70130, email: mlandis@hellerdraper.com, with an accounting of its Deficiency Claim following the sale of the above mentioned equipment.<br><br>Upon providing an accounting by the Accounting Deadline, Hanmi shall be entitled to a general unsecured claim in the amount of the Deficiency Claim and shall participate in distributions *pro rata* along with the holders of Class 10, General Unsecured Claims.<br><br>In the event that Hanmi fails to provide an accounting by the Accounting Deadline, Hanmi shall be deemed to have waived all right to a distribution under this plan. |
| Class 7 – Stearns Bank | YES | Stearns filed proof of claim no. 25, asserting a secured claim in the amount of $202,598.00, and an unsecured claim in the amount of $99,685.80. On August 24, 2023, the Debtor surrendered the equipment comprising Stearns collateral to Stearns.<br><br>Through this plan, and 11 U.S.C. § 554, the Debtor hereby formally abandons all right, title, and interest in the Stearns collateral (to the extent the estate retains any right, title, or interest) to Stearns in full satisfaction of its secured claim.<br><br>The Debtor will object to the Stearns Proof of Claim on the basis that the amount stated does not account for payments made by the Debtor prepetition and does not account for the value of the collateral that was surrendered by the Debtor, at which point it will become a Disputed Claim. |

| | | |
|---|---|---|
| | | Pending the Stearns Proof of Claim becoming an Allowed Claim, Stearns will be entitled to an allowed general unsecured claim comprising the Stearns Deficiency Claim following the sale of the Stearns Collateral, which amount shall be provided to the Debtor, through Debtor's counsel, no later than 28 days following the Effective Date.<br><br>Upon providing an accounting by the Accounting Deadline, Stearns shall be entitled to a general unsecured claim in the amount of the Deficiency Claim and shall participate in distributions *pro rata* along with the holders of Class 10, General Unsecured Claims.<br><br>In the event that Stearns fails to provide an accounting by the Accounting Deadline, Stearns shall be deemed to have waived all right to a distribution under this plan. |
| Class 8 – First Citizens | YES | First Citizens filed proof of claim no. 1, asserting a general unsecured claim based on the First Citizens Deficiency Claim of $275,171.77.<br><br>First Citizens shall be entitled to participate *pro rata* in distributions with the holders of Class 10, General Unsecured Claims. |
| Class 9 – Mitsubishi | YES | Mitsubishi filed proof of claim no. 26, asserting a secured claim in the amount of $906,588.65. On September 25, 2023, the Debtor surrendered the Mitsubishi collateral to Mitsubishi.<br><br>Through this plan, and 11 U.S.C. § 554, the Debtor hereby formally abandons all right, title, and interest in the Mitsubishi collateral (to the extent the estate retains any right, title, or interest) to Mitsubishi in full satisfaction of its secured claim. |

| | | |
|---|---|---|
| | | The Debtor will object to the Mitsubishi Proof of Claim on the basis that it does not account for the collateral that was surrendered by the Debtor, at which point it will become a Disputed Claim.<br><br>Pending the Mitsubishi Proof of Claim becoming an Allowed Claim, Mitsubishi will be entitled to an allowed general unsecured claim comprising the Mitsubishi Deficiency Claim following the sale of the Mitsubishi Collateral, which amount shall be provided to the Debtor, through Debtor's counsel, no later than 28 days following the Effective Date.<br><br>Upon providing an accounting by the Accounting Deadline, Mitsubishi shall be entitled to a general unsecured claim in the amount of the Deficiency Claim and shall participate in distributions *pro rata* along with the holders of Class 10, General Unsecured Claims.<br><br>In the event that Mitsubishi fails to provide an accounting by the Accounting Deadline, Mitsubishi shall be deemed to have waived all right to a distribution under this plan. |
| Class 10 – General Unsecured Claims | YES | The General Unsecured Creditor Class shall be paid in two ways. First, these Claimants will receive a *pro rata* portion of the Debtor's projected annual disposable income over a period of 12 quarters. These payments will be made directly by the Debtor as the disbursement agent (as opposed to the Subchapter V Trustee). These payments will be made on a quarterly basis, beginning on the 15th day of the third month following the Plan Effective Date. |
| Class 11 – Equity Holders | YES | Rodney Greenup, Jr. is the sole member of the Debtor and will retain his equity interest in the Debtor. Mr. Greenup is deemed to accept the plan. |

| Class 12 – Litigation Claims | YES | Class 12 consists of the Disputed Claims of the holders of Litigation Claims. The holders of the Litigation Claims shall be entitled to participate in distributions *pro rata* with the Class 10 General Unsecured Claims upon their Disputed Claims becoming Allowed Claims.<br><br>The amount the holders of the Litigation Claims would be entitled to receive should the full amount of their stated claims be deemed Allowed will be held in escrow pending resolution of the disputes related to the Litigation Claims.  Upon the Litigation Claims becoming Allowed Claims, the holders of the Litigation Claims will be entitled to a *pro rata* distribution with the holders of Class 10 claims in the allowed amount of their claims.<br><br>Any amounts of the Litigation Claims held in escrow and that are deemed unallowed will be distributed *pro rata* to the holders of Allowed Claims in Class 10.<br><br>In the event that resolution of any of the Litigation Claims results in a payment to the estate, all funds recovered from the Litigation Claims holders will be distributed *pro rata* to the holders of Allowed Claims in Class 10. |
|---|---|---|
| Class 13 – Ecorobotics Claim | YES | Ecorobotics filed claim no. 15 stating an unsecured claim in the amount of $2,107,304.80, including $963,426.13 in unpaid invoices, $39,438.62 in accrued interest, $19,500.00 in attorneys fees and costs, and $1,084,940.05 in claimed penalties.<br><br>Ecorobotics' claim for $1,084,940.05 in penalties (together with the subordinated claims of Class 14, the "Subordinated Claims") will be subordinated to Classes 1–10 and Class 12. Class 13 will only receive |

| | | |
|---|---|---|
| | | distributions after Classes 1–10 and Class 12 have been paid in full. It is not anticipated that the Subordinated Claims of Class 13 will receive payments.<br><br>Ecorobotics will have an allowed general unsecured claim in the amount of $1,022,364.75, representing the unpaid invoices, accrued interest, and attorneys fees, and will participate in its pro rata share of distributions to Class 10. |
| Class 14 – Beard Construction Group | YES | BCG filed claim no. 34, asserting a general unsecured claim in the amount of $309,148.50, including $290,179.00 in penalties and $18,969.50 in attorney's fees.<br><br>BCG's claim for $290,179.00 in penalties will be subordinated to Classes 1–10 and Class 12. Class 14 will only receive distributions after Classes 1–10 and Class 12 have been paid in full. It is not anticipated that the Subordinated Claims of Class 14 will receive payments.<br><br>BCG will have an allowed general unsecured claim in the amount of $18,969.50 for attorneys fees and will participate in its pro rata share of distributions under Class 10. |

## ARTICLE 6: ALLOWANCE AND DISALLOWANCE OF CLAIMS

| | | |
|---|---|---|
| 6.01 | Disputed Claim | A Disputed Claim is a Claim, or any portion thereof: (a) which is listed in the Schedules as disputed, contingent or unliquidated; or (b) as to which (i) a proof of Claim has been filed, (ii) an objection, or request for estimation, has been timely filed (and not withdrawn) by any party-in-interest, and (iii) no Final Order has been entered thereon. |
| 6.02 | Delay of distribution on a Disputed Claim | No distribution will be made on account of a Disputed Claim unless such claim is Allowed by a Final Order. |

| 6.03 | Settlement of Disputed Claims | The Debtor will have the power and authority to settle and compromise a Disputed Claim with Bankruptcy Court approval and compliance with Rule 9019 of the Bankruptcy Rules. |
|---|---|---|
| 6.04 | Treatment once Allowed | If a Disputed Claim is Allowed in accordance with this Plan, it shall receive treatment in accordance with the classes set forth in Article 5 above.<br><br>In the event that a Disputed Claim or portion of a Disputed Claim is not allowed, the escrowed funds allocated to that Disputed Claim or portion of the Disputed Claim that is unallowed shall be distributed *pro rata* among the Allowed Claims in Class 10. |

## ARTICLE 7: PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

| 7.01 | Assumed executory contracts and unexpired leases | All executory contracts and unexpired leases that have not otherwise been rejected by order of the Court, through this plan, or which are the subject of a pending motion to reject, will be deemed assumed under 11 U.S.C. § 365 as of the Effective Date.<br><br>A list of the executory contracts and unexpired leases of the Debtor are listed in Schedule G [ECF Doc. 112]. |
|---|---|---|
| 7.02 | Cure Amounts | All counter parties to executory contracts and/or unexpired leases that are assumed by this plan shall have twenty-eight (28) days from the Effective Date to assert a cure amount by written notice to Debtor's counsel. |

## ARTICLE 8: MEANS FOR IMPLEMENTATION OF THIS PLAN

The Debtor will fund its plan payments from its disposable income earned from the Debtor's operations. To date, the Debtor has filed monthly operating reports for December 2023, and January, February, March, and April 2024.

The Debtor bases its projected disposable income on historical data, current performance, expected contract awards in the fourth quarter of 2024, and the management's experience.

Through the Debtor's already secured projects and its anticipated, projects, the Debtor's **total anticipated gross revenue from July 2024 through June 2027 is $3,630,624.96.** After

costs and expenses of $3,074,824.50, and administrative and priority claim payments, the **projected disposable income over three years is anticipated to be $318,163.42**.

The Debtor shall serve as the disbursing agent under this Plan, whether the Plan is confirmed under § 1191(a) (consensual confirmation) or § 1191(b) (non-consensual confirmation) of the Bankruptcy Code.

The Debtor shall provide the Subchapter V Trustee and the US Trustee with semi-annual reports of all distributions made pursuant to the Plan for the preceding six months, which reports shall indicate the date, amount, and payee for each distribution. The first report shall be due on December 31, 2024.

To the extent that the Subchapter V Trustee incurs any fees and expenses post-confirmation for review of the distribution reports, she shall file a Notice of Fees and Expenses Incurred with 14-day notice to parties in interest. If there is no objection, the Reorganized Debtor shall remit payment to the Subchapter V Trustee. To the extent there is an objection, the Debtor shall remit payment to the Subchapter V Trustee in whatever amount is ultimately approved by the Bankruptcy Court.

### 8.1. Holders of Allowed Secured Claims

As set forth above, the secured claims of Classes 1, 2, 3, and 4 are determined under 11 U.S.C. § 506(a), Federal Rule of Bankruptcy Procedure 3007 and 3012. The Debtor shall make payments to the claim holder in accordance with the provisions set forth in Article 5, above. Each holder of a secured claim shall retain the lien securing the claim until the secured value, as determined by the Bankruptcy Court, or the amount of the claim, whichever is less, is paid in full.

### 8.2. Holders of Deficiency Claims

As set forth above, the Deficiency Claims of Classes 5, 6, 7, 8, and 9 are determined under U.S.C. § 506(a) pending the sale of the of the Deficiency Claims holders' collateral. To be clear, the claim of Wells Fargo Equipment Finance, Inc. (Proof of Claim No. 18) shall also be treated as a Deficiency Claim.[5] Upon the sale of the surrendered collateral and the holders of the Deficiency Claims providing an accounting to Debtor's counsel, Michael Landis, at 650 Poydras St., Ste. 2500, New Orleans, LA 70130, email mlandis@hellerdraper.com, no later than the Accounting Deadline, the holders of the allowed Deficiency Claims shall be entitled to distributions along with the holders of Class 10, general unsecured creditors, as set forth in Article 5, above.

### 8.3. Holders of Allowed General Unsecured Claims

Class 10 comprises creditors holding allowed general unsecured claims. These claims shall be paid as set forth under Article 5 above.

---

[5] Wells Fargo asserts its proof of claim based on a guaranty of the Debtor for a debt owed by a non-debtor affiliate, Greenup Holdings, LLC. Wells Fargo's claim was secured by equipment belonging to Greenup Holdings. Greenup Holdings surrendered the equipment securing the Wells Fargo claim on September 26, 2023.

8.4     Holders of Subordinated Claims

Classes 13 and 14 comprise the creditors holding claims representing penalties for punitive damages arising before the order for relief and do not represent compensation for actual pecuniary loss suffered by the holders of Class 13 and 14 claims.  As such, they will be subordinated to the holders of all other claims, except for Class 12, representing equity.

## ARTICLE 9:  GENERAL PROVISIONS

| 9.01 | Definitions and rules of construction | The definitions and rules of construction set forth in §§ 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Bankruptcy Code are used in this Plan, and such definitions and rules are supplemented by the following definitions:<br><br>• *See* **Exhibit D**. |
|------|----------------------------------------|--------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
| 9.02 | Effective Date | The Effective Date of this Plan is the first business day following the date that the Confirmation Order becomes final, which is generally fourteen (14) days after the entry of the Confirmation Order.<br><br>Except as provided in this Plan or the order confirming this Plan, all of the property of the estate, pursuant to §§ 1141(b) and 1141(c) of the Bankruptcy Code, vests in the Debtor as of the Effective Date free and clear of any claim or interest of any creditor provided for by this Plan.  If the Plan is confirmed under § 1191(b), property of the estate, including property under § 1186(a), shall not vest in the Debtor until this case is dismissed or a discharge is entered pursuant to § 1192. |
| 9.03 | Severability | If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan. |
| 9.04 | Binding Effect | The rights and obligations of any entity named or referred to in this Plan will be binding upon and will inure to the benefit of the successors or assigns of such entity.<br><br>Except as provided in §§ 1141 or 1192 of the Bankruptcy Code, as applicable, the provisions of this Plan shall, upon confirmation, bind the Debtor, each and every creditor of this estate and each party in interest, whether or not the claim of such creditor or party is provided for by the Plan and whether |

| | | |
|---|---|---|
| | | or not such creditor or party has accepted or has rejected the Plan. |
| 9.05 | Retained Causes of Action | Unless any Retained Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or by a Final Order, in accordance with § 1123(b) of the Bankruptcy Code, the Debtor shall retain, all rights to commence and pursue any and all Retained Causes of Action, whether arising before or after the Petition Date.<br><br>The Retained Causes of Action shall include, but not be limited to, the following:<br><br>  a) *Greenup Industries, LLC v. Five S Group, LLC, et al*, Case No. 22-02203, pending in the United States District Court for the Eastern District of Louisiana. |
| 9.06 | Captions | The headings contained in this Plan are for convenience or reference only and do not affect the meaning or interpretation of this Plan. |
| 9.07 | Applicable law | Unless a rule of law or procedure is supplied by Federal law, including the Bankruptcy Code or the Bankruptcy Rules, the laws of the State of Louisiana govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan. |
| 9.08 | Retention of Jurisdiction | The Bankruptcy Court shall retain jurisdiction of the Chapter 11 Case with regard to the following matters: (i) to make such orders as are necessary or appropriate to implement the provisions of this Plan and to resolve any disputes arising from implementation of this Plan; (ii) to rule on any modification of this Plan; (iii) to hear and allow all applications for compensation to Professionals and other Administrative Expenses Claims; (iv) to litigate and/or otherwise resolve any Plan default or other issues arising between the U.S. Trustee, the Subchapter V Trustee, the Disbursement Agent, a Creditor herein and/or the Debtor; (v) to resolve all issues regarding objections to Claims, and issues arising from the assumption/rejection of executory contracts or unexpired leases, and (vi) to adjudicate any action which may exist in favor of the Debtor to enforce the provisions contained within this Plan. |

| 9.09 | Computing time | In computing any period of time prescribed or allowed hereby, the provisions of Bankruptcy Rule 9006(a) shall apply as though this Plan is an order of the Bankruptcy Court. Business day means any day other than a Saturday, a Sunday, "legal holidays" (as defined under Bankruptcy Rule 9006(a)), or any other day on which banking institutions in New Orleans, LA are required or authorized to close by law or executive order. |
| 9.10 | Subchapter V Trustee's Services | If this Plan is confirmed on a consensual basis, the Subchapter V Trustee's services will be terminated when this Plan is substantially consummated. Even if this Plan is confirmed under § 1191(b) of the Bankruptcy Code, the Debtor, not the Subchapter V Trustee, will be responsible for making distributions under this Plan. |
| 9.11 | Post-Confirmation Automatic Stay | If the Debtor's Plan is consensually confirmed under § 1191(a), the bankruptcy automatic stay terminates upon Confirmation. If the Debtor's Plan is non-consensually confirmed under § 1191(b) of the Bankruptcy Code, the automatic stay will remain in place until such time as the case is closed. |
| 9.12 | Effective Date, Substantial Consummation and Final Decree | The Debtor shall file with the Bankruptcy Court a notice of the occurrence of the Effective Date on the Effective Date or as soon as practicable thereafter.<br><br>Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Debtor shall file a Notice of Substantial Consummation with the Bankruptcy Court along with a Motion to obtain a Final Decree to close the case.  Alternatively, the Bankruptcy Court may enter such a final decree on its own motion. |
| 9.13 | Distributions | If any distribution is returned as undeliverable or remains unclaimed after thirty days of the distribution date, no further distributions to the applicable holder shall be made unless and until the Distribution Agent is notified in writing of such holder's then-current address, and after the Distribution Agent makes a reasonable attempt to contact the claim holder.   Such holders of returned and/or unclaimed distributions shall be automatically discharged and forever barred, notwithstanding any federal or state escheat laws to the contrary.  Any funds that are returned to the Distribution Agent or not timely presented for payment within thirty days |

| | | |
|---|---|---|
| | | of the issue date, shall be used by the Distribution Agent to make an additional distribution pursuant to the terms of the Plan.  Ninety days after the final distribution, the Distribution Agent shall stop payment on any check remaining unpaid and any remaining property of the estate shall be paid into the Court and disposed of under chapter 129 of title 28.<br><br>Whenever a distribution hereunder is required to be made on a day other than a Business Day, such distribution shall be made on the first Business Day immediately following, without interest.<br><br>Any other provision of this Plan to the contrary notwithstanding, no payments of fractions will be made. Whenever a payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding off of such fraction to the nearest whole cent (rounding down in the case of .5).<br><br>Whenever a distribution is less than $15, the funds will not be distributed, shall accumulate, and shall be paid whenever the accumulation aggregates $15.  Any funds remaining shall be distributed with the final payment. |
| 9.14 | Notices | All Notices to be provided under this Plan shall be provided as follows:<br><br>To the Debtor:<br><br>Greenup Industries, LLC<br>Rodney Greenup, Jr.<br>2400 Veterans Blvd, Ste. 500<br>Kenner, Louisiana 70062<br><br>To Debtor's Counsel:<br><br>Michael Landis<br>Heller, Draper & Horn, LLC<br>650 Poydras Street, Suite 2500<br>New Orleans, Louisiana 70130<br>Email: mlandis@hellerdraper.com |

## ARTICLE 10:  DISCHARGE

If the Debtor's Plan is confirmed under § 1191(a) of the Bankruptcy Code, the Debtor will be discharged upon the Effective Date of the Plan from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Bankruptcy Code. The Debtor will not be discharged from any debt: (i) imposed by this Plan; or (ii) excepted from discharge under § 523(a) of the Bankruptcy Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

If the Debtor's Plan is confirmed under § 1191(b) of the Bankruptcy Code, confirmation of the Plan does not discharge any debt provided for in this Plan until the Bankruptcy Court grants a discharge upon completion of all payments due within the first three (3) years of this Plan, or as otherwise provided in § 1192 of the Bankruptcy Code. The Debtor will not be discharged from any debt: (i) on which the last payment is due after the first three years of the plan, or as otherwise provided in § 1192 of the Bankruptcy Code; or (ii) excepted from discharge under § 523(a) of the Bankruptcy Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

## ARTICLE 11:  DEFAULT

This Article shall only apply if this Plan is confirmed pursuant to § 1191(b) of the Bankruptcy Code. Under § 1191(c)(3)(B) of the Bankruptcy Code, if the plan is confirmed on a non-consensual basis, the Debtor is required to "provide appropriate remedies, which may include the liquidation of nonexempt assets, to protect the holders of claims or interests in the event that the payments are not made."

As to secured creditors, default provisions are provided within the treatment of Classes 1, 2, 3, and 4 above. As to the Classes 5, 6, 7, 8, 9, 10, 12, 13, and 14, if the Debtor defaults on its monthly payments to the Deficiency Creditors, the Unsecured Creditor Class, or the Litigation Claims Class for a period of more than 20 days, any creditor who has not received payment shall give written notice to the Debtor and Debtor's counsel of the default.  Upon receipt of the notice of default, the Debtor shall have 10 days to cure the default by making the payment.  If the Debtor fails to cure the default within 10 days of receiving the notice of default, the creditor may file a notice of default with the Bankruptcy Court and move to convert the case to a case under chapter 7 of the bankruptcy code in accordance with the Federal Rules of Bankruptcy Procedure and the Local Rules.

*The Bankruptcy Court shall specifically retain jurisdiction to enforce this default provision.*

**THE DEBTOR ASKS THAT CREDITORS VOTE IN FAVOR OF THIS PLAN.**

Dated: June 7, 2024          _____*/s/ Rodney Greenup Jr.*_____
                              Rodney Greenup, Jr.
                              Sole Member and President
                              Greenup Industries, LLC
                              Debtor In Possession

Submitted by:
**HELLER, DRAPER & HORN, LLC**

/s/ ***Michael E. Landis***
Michael E. Landis (La. Bar No. 36542)
650 Poydras Street, Suite 2500
New Orleans, Louisiana 70130
Email: mlandis@hellerdraper.com
Counsel for Chapter 11 Debtor Greenup Industries, LLC.