**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| IN RE: | § § | CASE NO: 23-12179 |
| GREENUP INDUSTRIES LLC, | § § | CHAPTER 11 |
| DEBTOR. | § § § | SECTION A |

## MEMORANDUM OPINION AND ORDER

The Court held an evidentiary hearing on May 29, 2024, to resolve the *Objection to the Proof of Claim of Jon Michael Robison (No. 13)* (the "Claim Objection"), [ECF Doc. 176], filed by the Debtor, the response to the Claim Objection filed by Robison, [ECF Doc. 198], and the reply brief filed by the Debtor in support of its Claim Objection, [ECF Doc. 291].

APPEARANCES:

Michael E. Landis, counsel for the Debtor; and
Jon Michael Robison, appearing *pro se*.

The Court heard testimony from Jon Michael Robison and Rodney Greenup, the President and sole manager-member of the Debtor. The Court admitted the following exhibits into evidence: Debtor Exhibits 1 & 2, [ECF Doc. 292]; and Creditor Exhibits B, C, E, F, & G, [ECF Doc. 294].

### JURISDICTION

This Court has jurisdiction to hear and decide this contested matter pursuant to 28 U.S.C. § 1334. The matter presently before the Court constitutes a core proceeding that this Court may hear and determine on a final basis under 28 U.S.C. § 157(b)(2)(A), (B) & (O). The venue of the Debtor's chapter 11 case is proper under 28 U.S.C. §§ 1408 and 1409.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW[1]

1. The claim-allowance process is governed by §§ 501 and 502 of the Bankruptcy Code (defining the claims that are allowed and those disallowed) and by Rules 3001 and 3002 of the Federal Rules of Bankruptcy Procedure (prescribing the procedure for adjudicating claims and outlining places and deadlines for filing proofs of claim). A proof of claim is deemed allowed unless a party in interest objects to its allowance. *See* 11 U.S.C. § 502(a).

2. Importantly, "Rule 3001 allocates the burden of proof with respect to a proof [of] claim for which an objecting party has raised an objection that would warrant disallowance under § 502(b)." *In re Today's Destiny, Inc.*, No. 05-90080, 2008 WL 5479109, at *2 (Bankr. S.D. Tex. Nov. 26, 2008). "A proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim." FED. R. BANKR. P. 3001(f). "If a proof of claim has prima facie validity, the objecting party must produce sufficient evidence to overcome the proof of claim's prima facie validity." *In re Today's Destiny, Inc.*, 2008 WL 5479109, at *4 (citing 11 U.S.C. § 502(a); *In re Armstrong*, 320 B.R. 97, 102–03 (Bankr. N.D. Tex. 2005)). "If the objecting party puts forth sufficient evidence to rebut a proof of claim's prima facie validity, the claim is not per se denied." *Id*. (citations omitted). "Rather, the proof of claim simply loses the presumption of validity." *Id*. (citation omitted). "At the evidentiary hearing, who bears the burden of proof and the standard of proof are determined by applicable state law." *Id*. (citations omitted). "The presumption treating the proof of claim as prima facie evidence of validity and amount operates to create a mere rebuttable presumption. If rebutted, then the ultimate

---

[1] To the extent that any of the following findings of fact are determined to be conclusions of law, they are adopted and shall be construed and deemed conclusions of law. To the extent any of the following conclusions of law are determined to be findings of fact, they are adopted and shall be construed and deemed as findings of fact.

burden of proof is on the claimant." *Id*. (quoting *In re Garner*, 246 B.R. 617, 622 (B.A.P. 9th Cir. 2000)).

3. The Debtor's objection to Robison's proof of claim sufficiently rebutted the presumption of the claim's facial validity. Therefore, the burden of proof at trial shifted to Robison to demonstrate the amount of his claim and that his claim is entitled to priority status under 11 U.S.C. § 507(a)(4).

### Witness Credibility Determinations

4. The Court finds Robison to be a generally credible and earnest witness. He appeared to answer questions posed to him truthfully to the best of his recollection. Robison had no role in procuring contracts on behalf of the Debtor and had no role in managing the finances of the Debtor. *See* Hr'g Rec'g 2:14–:18 (May 29, 2024).

5. The Court finds Greenup to be a generally credible and earnest witness. He appeared to answer questions posed to him truthfully to the best of his recollection. Greenup oversees and is directly involved with the business decisions and financial affairs of the Debtor, and the Court gives weight to his testimony on those matters accordingly. *See* Hr'g Rec'g 1:40–:44.

### Robison's Employment and the Bonus Structure

6. The Debtor, a construction management/consultant company working in the hurricane protection/damage mitigation space, filed a Chapter 11 bankruptcy petition on December 20, 2023. [ECF Doc. 1]. Robison, a former project manager for the Debtor, timely filed Proof of Claim No. 13, asserting a priority unsecured claim for $18,691.96, checking the box for "[w]ages, salaries, or commissions (up to $13,650) earned within 180 days before the bankruptcy petition is filed" under 11 U.S.C. § 507(a)(4), seeking to recoup amounts allegedly owed under the company's 2023 bonus program. *See* Proof of Claim No.13.

3

7. The Debtor employed Robison as a project manager from June 1, 2018, until August 25, 2023. [Creditor Exs. B & E].

8. On December 23, 2019, the Debtor's Human Resources Coordinator sent an e-mail to Robison stating that he would receive a bonus in the amount of $6,366.39, representing "a 1/2 % bonus on invoices to client in amounts that exceed $1M Invoiced during the time frame you were the [project manager] for that/those sites." [Debtor Ex. 1]. Although the December 23, 2019 e-mail from the Human Resources Coordinator a does say that "[a] new bonus structure for Industrial 3rd Party PMs will be introduced at the beginning of 2020," [Debtor Ex. 1], no evidence of such a change was provided at trial. In fact, Robison received bonuses between 2020 and 2022 based on the 2019 bonus structure. [Creditor Ex. E]; Hr'g Rec'g 1:22–:28. The Court finds that the bonus structure from 2019 applies to calendar year 2023 and would have been used to calculate any bonus earned by Robison.

9. According to the testimony of both Robison and Greenup, bonuses were calculated and paid based on accounts receivable **actually collected** in a given calendar year on contracts that generated more than $1 million in revenue. *See* Hr'g Rec'g 1:43–2:03; [Debtor Ex. 1].

10. Only two of the Debtor's projects generated accounts receivable over $1 million in 2023: the Geismar Project and the Norco/Mobile Project. *See* Hr'g Rec'g 1:43–2:03; [Creditor Ex. F].

11. Robison's final day of employment with the Debtor was August 25, 2023. On August 24, 2023, Robison sent an e-mail to the Debtor's Human Resources Coordinator, reporting a conversation he had with Greenup, in which Greenup purportedly promised to pay Robison "everything due, including days worked, PTO and bonus money accumulated through [Robison's] last day." [Creditor Ex. B]. On August 25, 2023, Robison received an e-mail from the Debtor's

4

Human Resources Coordinator stating that she had "confirmed with [Greenup] what was owed now vs. later" and stated that "[a]s soon as we are able to fund it, we will make you whole for the missing check and on the check for your PTO and hours for this current pay period." [Creditor Ex. C]. That e-mail further stated that "[t]he bonus will have to wait at minimum until we were going to pay it at the end of the year/beginning of next." *Id.*

12. Greenup testified that the Debtor's invoice reports were used to calculate the bonuses—particularly the "Invoice Amount" and "Date Paid" columns. Hr'g Rec'g 2:02–:03; [Creditor Exs. F & G]. Robison conceded at the evidentiary hearing that the Debtor's internal records show that most of the invoices issued by the Debtor in 2023 were not paid. Hr'g Rec'g 2:02–:06.

### The Geismar Project Invoices

13. The Court finds that seventeen invoices, totaling $1,315,544.48, were paid in 2023 for the Geismar project, as summarized below:

| **Greenup Invoice No.** | **Invoice Amount** | **Date Paid** |
|---|---|---|
| 23-0120 | $3,397.25 | 3/20/2023 |
| 23-0149 | $25,235.36 | 3/20/2023 |
| 23-0110 | $2,221.28 | 3/6/2023 |
| 23-0073 | $1,519.40 | 3/21/2023 |
| 23-0045 | $3,390.41 | 3/8/2023 |
| 23-0025 | $17,601.50 | 3/31/2023 |
| 22-1567 | $172,040.20 | 1/19/2023 |
| 23-0038 | $171,663.40 | 2/1/2023 |
| 23-0066 | $213,111.61 | 3/9/2023 |
| 23-0067 | $124,201.59 | 2/15/2023 |
| 22-1538 | $154,056.69 | 1/5/2023 |
| 22-1568 | $317,652.81 | 1/19/2023 |
| 22-1413 | $7,073.00 | 1/4/2023 |
| 23-0103 | $46,697.80 | 3/13/2023 |
| 22-1028 | $12,287.18 | 2/23/2023 |
| 22-1578 | $18,095.00 | 3/31/2023 |
| 22-1577 | $25,300.00 | 3/31/2023 |
| **Total:** | **$1,315,544.48** | |

[Creditor Ex. F].

14. Based on the accounts receivable associated with the Geismar project that the Debtor actually collected in 2023, the Court finds that Robison earned a bonus of $1,577.72.[2]

### The Norco Project Invoices

15. The Court finds that eighty (80) invoices, totaling $1,159,400.10 were paid in 2023 for the Norco site, as summarized below:

| Greenup Invoice No. | Invoice Amount | Date Paid |
|---|---|---|
| 23-0187 | $2,578.70 | 4/18/2023 |
| 23-0128 | $25,926.64 | 3/20/2023 |
| 23-0124 | $102,176.93 | 3/6/2023 |
| 23-0080 | $2,856.90 | 3/9/2023 |
| 23-0052 | $5,713.80 | 2/28/2023 |
| 23-0051 | $118,235.00 | 4/24/2023 |
| 23-1715 | $125,648.57 | 5/22/2023 |
| 23-0037 | $10,037.56 | 2/21/2023 |
| 23-0036 | $1,598.36 | 2/6/2023 |
| 23-0146 | $1,537.45 | 3/20/2023 |
| 23-0160 | $17,350.01 | 3/22/2023 |
| 23-0219 | $27,567.95 | 4/20/2023 |
| 23-1651 | $1,305.46 | 5/8/2023 |
| 23-1595 | $183,146.85 | 4/17/2023 |
| 23-1656 | $19,580.23 | 5/8/2023 |
| 23-0022 | $17,081.72 | 5/17/2023 |
| 23-0039 | $1,704.96 | 2/6/2023 |
| 23-0041 | $1,703.75 | 2/6/2023 |
| 23-0077 | $1,761.21 | 2/24/2023 |
| 23-0157 | $933.81 | 3/21/2023 |
| 23-0158 | $1,543.43 | 3/21/2023 |
| 23-0202 | $436.01 | 4/7/2023 |
| 23-0203 | $2,511.26 | 4/10/2023 |
| 23-0204 | $525.36 | 4/10/2023 |
| 23-1618 | $1,146.23 | 4/24/2023 |
| 23-1623 | $5,899.06 | 4/25/2023 |
| 23-1621 | $3,636.27 | 4/25/2023 |
| 23-1622 | $2,921.81 | 4/25/2023 |
| 23-0019 | $713.88 | 2/2/2023 |
| 23-0040 | $483.99 | 2/6/2023 |

---

[2]    $1,577.72 = ($1,315,544.48 - $1,000,000.00) * 0.005

| | | |
|---|---|---|
| 23-0156 | $1,516.70 | 3/21/2023 |
| 23-1617 | $801.84 | 4/24/2023 |
| 23-0063 | $1,833.94 | 2/21/2023 |
| 23-0125 | $2,552.16 | 3/7/2023 |
| 23-0053 | $2,937.00 | 2/6/2023 |
| 23-0011 | $5,403.50 | 3/29/2023 |
| 23-0010 | $6,173.90 | 4/6/2023 |
| 23-0009 | $3,905.50 | 3/29/2023 |
| 23-0008 | $3,905.50 | 3/29/2023 |
| 23-0007 | $7,554.20 | 4/6/2023 |
| 23-0005 | $4,199.75 | 3/29/2023 |
| 23-0004 | $5,403.50 | 3/29/2023 |
| 23-0006 | $7,500.70 | 4/6/2023 |
| 23-0003 | $6,473.50 | 3/27/2023 |
| 22-1583 | $3,810.68 | 2/21/2023 |
| 22-1514 | $63,418.90 | 2/22/2023 |
| 23-0001 | $3,692.96 | 3/21/2023 |
| 22-1588 | $3,440.05 | 3/21/2023 |
| 22-1558 | $9,900.00 | 1/20/2023 |
| 22-1279 | $4,457.13 | 5/16/2023 |
| 22-1073 | $8,698.29 | 2/7/2023 |
| 22-1072 | $8,698.29 | 2/7/2023 |
| 22-1071 | $7,253.80 | 2/9/2023 |
| 22-1049 | $7,490.36 | 2/9/2023 |
| 22-1048 | $3,989.44 | 2/9/2023 |
| 22-1044 | $3,989.44 | 2/9/2023 |
| 22-1037 | $4,950.00 | 1/11/2023 |
| 22-1547 | $1,655.19 | 1/19/2023 |
| 22-1548 | $3,171.81 | 1/19/2023 |
| 22-1546 | $728.51 | 1/19/2023 |
| 22-1549 | $871.18 | 1/19/2023 |
| 22-1550 | $345.38 | 1/19/2023 |
| 22-1565 | $568.69 | 2/2/2023 |
| 22-1500 | $11,788.15 | 1/3/2023 |
| 22-1502 | $27,764.00 | 1/3/2023 |
| 22-1501 | $50,117.09 | 3/29/2023 |
| 22-1483 | $21,003.18 | 1/19/2023 |
| 22-1573 | $21,003.18 | 2/3/2023 |
| 23-0168 | $20,430.37 | 3/29/2023 |
| 23-0098 | $20,430.37 | 3/2/2023 |
| 23-0167 | $48,915.05 | 4/14/2023 |
| 22-1566 | $14,444.43 | 2/21/2023 |
| 22-1575 | $7,807.80 | 2/21/2023 |
| 22-1380 | $8,800.00 | 2/23/2023 |
| 22-1250 | $2,414.50 | 2/1/2023 |

7

| | | |
|---|---|---|
| 21-2350 | $2,937.00 | 1/12/2023 |
| 22-1537 | $5,000.23 | 1/4/2023 |
| 22-1585 | $1,391.00 | 3/9/2023 |
| 22-1587 | $4,207.80 | 3/20/2023 |
| 22-1586 | $1,391.00 | 3/20/2023 |
| **TOTAL:** | **$1,159,400.10** | |

[Creditor Ex. G].

16. Based on the accounts receivable associated with the Geismar project that the Debtor actually collected in 2023, the Court finds that Robison earned a bonus of $797.00.[3]

17. In sum, the Court finds that Robison earned a total bonus of $2,374.72 based on accounts receivable associated with the Geismar and Norco projects that were actually collected by the Debtor in 2023.

**Robison's Bonus Is Not Entitled to Priority Treatment Under 11 U.S.C. § 507(a)(4)(A)**

18. To qualify as a priority unsecured claim under 11 U.S.C. § 507(a)(4), the "wages, salaries, and commissions" must be "earned within 180 days before the bankruptcy petition is filed." Given that the Debtor filed for bankruptcy protection on December 20, 2023, any bonus that Robison is entitled to must have been earned after June 23, 2023 to qualify for priority distribution status in the Debtor's bankruptcy case.

19. All of the accounts receivable on the Geismar and Norco projects that would have been used to calculate Robison's bonus were paid to the Debtor before June 23, 2023; therefore, the bonus of $2,374.72 is not entitled to priority distribution status under § 507(a)(4).[4] The Court

---

[3] $797.00 = ($1,159,400.10 - $1,000,000.00) * 0.005

[4] The Court observes a split in decisions as to whether "bonuses" generally fall within the scope of "wages, salaries, or commissions." *Compare In re Cardinal Indus., Inc.*, 160 B.R. 83 (S.D. Ohio 1993) (holding a bonus fell within the scope of "wages, salaries, or commissions" in a prior version of 11 U.S.C. § 507(a)(3)), *with Aerotek, Inc. v. Obercian*, 377 F. Supp. 3d 539 (D. Md. 2019) ("[N]ot all bonuses constitute wages. Bonuses are wages 'only if given in exchange for an employee's work.'" (internal citations omitted)). Given its finding that none of the accounts receivable that would have been used to calculate Robison's bonus were received by the Debtor within 180 days of the Debtor's bankruptcy filing

8

finds that Robison's claim for wages, salaries, and commissions did not accrue within 180 days of the Debtor's bankruptcy filing. Therefore, Robison's claim is not allowable as a priority unsecured claim under § 507(a)(4); however, Robison is allowed a general unsecured claim in the amount of $2,374.72.

## CONCLUSION

For the foregoing reason stated,

**IT IS ORDERED** that the Claim Objection is **SUSTAINED IN PART** and **OVERRULED IN PART** as set forth herein.

**IT IS FURTHER ORDERED** that Claim No. 13, filed by Jon Michael Robison, is **DISALLOWED** as a priority unsecured claim under 11 U.S.C. § 507(a)(4), but is **ALLOWED** as a general unsecured claim in the amount of $2,374.72.

New Orleans, Louisiana, October 8, 2024.

_____
MEREDITH S. GRABILL
UNITED STATES BANKRUPTCY JUDGE

---

and thus are ineligible for priority treatment, the Court need not reach the question of whether Robison's bonus falls within the scope of "wages, salaries, or commissions" for purposes of § 507(a)(4).